WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Lee LaChance, | No. CV-04-457-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County Flood Control, et al., | |
| Defendants. | |

*Pro se* Plaintiff James Lee LaChance is an inmate in the custody of the Arizona Department of Corrections[1] ("ADOC") who has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. At issue are three motions for summary judgment: one filed by Defendant Leonard A. Dumas (Doc. 122), another filed by Defendants Melvin Thomas, CSC, Dennis R. Kendall and Sherry Mullen (Doc. 131), and a third filed by Defendant Dora B. Schriro (Doc. 173).

---

[1]Plaintiff has been housed, at all relevant times, in the Arizona State Prison Phoenix-West facility, a prison owned and operated by Correctional Services Corporation ("CSC").

I. **BACKGROUND**[2]

The basic facts are not in dispute. On July 31, 2003, Plaintiff injured himself while performing manual labor as part of an ADOC work crew. The same day, he submitted a Health Needs Request ("HNR"), complaining of extreme lower abdominal pain.

On August 28, 2003, doctors at the surgical clinic of the Maricopa Medical Center ("MMC") diagnosed Plaintiff with a reducible left inguinal hernia. He was scheduled for surgery on September 24, 2003, but ADOC officials cancelled it because the hernia remained small and reducible. Plaintiff does not blame Dumas for the surgery's cancellation. (Pl.'s Aff. in Supp. of his Resp. to Dumas's Mot. for Summ. J. ("Pl.'s Aff.") at 2.)

Dumas is a Doctor of Osteopathic Medicine. (Dumas's Statement of Facts in Supp. of Mot. for Summ. J., Ex. B ("Dumas Aff.") at 1.) He is not a surgeon, and "did not make surgical decisions. Rather, [he] sent [Plaintiff] for surgical consultations when needed." (Dumas Aff. at 2.) Dumas "cared for Plaintiff from 2003 to 2005." (Dumas Aff. at 2.)

Dumas first evaluated Plaintiff on October 7, 2003. Concurring with the basic diagnosis of the MMC doctors, Dumas prescribed a course of treatment for Plaintiff that included Ibuprofen, Tylenol, relocation to a lower bunk, and cessation of manual labor. In Dumas's view, surgery at that point would have been elective. "Non-elective surgery is only indicated when a hernia is strangulated or non-reducible. This is because a hernia that is strangulated or non-reducible may cut off the blood supply to the intestine resulting in gangrene or other complications." (Dumas Aff. at 1.)

Plaintiff disagreed with Dumas's prescribed course of treatment. From the moment of the injury, Plaintiff believed that the hernia should be surgically repaired. He requested surgery in August 2003 and again in April 2004. Additionally, Plaintiff submitted numerous

---

[2]The following facts are drawn exclusively from evidence submitted by Dumas in support of his motion for summary judgment and evidence submitted by Plaintiff opposing it. No facts were drawn from the motion for summary judgment filed by Thomas, CSC, Kendall and Mullen, as, for reasons discussed below, that motion is granted without opposition.

- 2 -

1 HNRs during the remainder of 2003 and throughout 2004 and the first part of 2005, all
2 complaining of severe pain emanating from the hernia, and requesting remedies beyond those
3 which had already been prescribed.

4 Dumas met with Plaintiff at the end of October 2003, twice in December 2003, and
5 multiple times in 2004 and 2005. Each time, Dumas examined Plaintiff's hernia, and
6 concluded that it remained reducible and did not require surgery. At some point in 2003,
7 Dumas suggested that Plaintiff wear a "hernia belt," though on subsequent visits, Dumas
8 noted that Plaintiff had not been doing so. Plaintiff was informed on several occasions that
9 in the event his hernia became strangulated or non-reducible, the decision of whether to
10 operate would be re-evaluated. By December 2004, Dumas began to prescribe Tylenol with
11 Codeine in addition to the other medication.

12 By the end of March 2005, the hernia had grown in size, to the point where it was
13 "filling the plaintiff's scrotum." (Dumas Aff. at 3.) Following this observation, Dumas "re-
14 submitted the request for surgery and on April 20, 2005, surgery was performed to repair the
15 hernia." (Dumas Aff. at 3.)

16 Plaintiff filed this lawsuit on March 4, 2004, pursuant to 42 U.S.C. § 1983, because
17 of what he believed to be the various Defendants' deliberate indifference to his medical
18 needs, in violation of his Eighth Amendment rights. As it pertains to Dumas, the sole basis
19 of the Complaint is the refusal to properly treat the hernia. The Complaint was amended on
20 August 16, 2004, and was first served on Dumas in October 2004. Plaintiff attributes the
21 service of this lawsuit on Dumas to Dumas's change in attitude with regard to whether to
22 recommend the surgical repair of the hernia.

23 **II.  LEGAL STANDARDS AND ANALYSIS**

24     **A.  Motion for Summary Judgment Filed by Thomas, CSC, Kendall and
25     Mullen**

26 These Defendants filed their motion for summary judgment on August 30, 2005.
27 Several weeks prior to the filing of that motion, Dumas filed his own motion for summary
28 judgment, and on August 31, 2005, Defendant Maricopa County Flood Control District

1  ("MCFCD") filed a motion for summary judgment. On September 7, 2005, Magistrate Judge
2  Virginia A. Mathis issued an Order stating that Plaintiff had until October 7, 2005 to file
3  responses to the three motions for summary judgment then-pending against him. The Order
4  stated that "[t]he failure of plaintiff to respond to defendants' Motions for Summary Judgment
5  may in the discretion of the Court be deemed a consent to the granting of the Motions
6  without further notice. . ."

7  As to the motion for summary judgment filed by MCFCD, Plaintiff responded by
8  asking the Court to dismiss his claim against that Defendant. The Court complied in an
9  Order dated October 19, 2005. As to the motion for summary judgment filed by Dumas,
10 Plaintiff responded in a timely manner, and Dumas replied in kind.

11 As to the motion for summary judgment filed by Thomas, CSC, Kendall and Mullen,
12 Plaintiff did not respond at all. The Court will exercise its discretion and deem Plaintiff's
13 failure to respond as consent to the granting of summary judgment in favor of those
14 Defendants. *Brydges v. Lewis,* 18 F.3d 651, 652 (9th Cir. 1994). Plaintiff was aware of the
15 summary judgment deadlines in light of Magistrate Judge Mathis' Order, and Plaintiff
16 responded in a timely manner to the other two motions for summary judgment. Additionally,
17 he has continued to prosecute other aspects of this litigation. As such, the Court grants the
18 motion for summary judgment filed by Thomas, CSC, Kendall and Mullen.

19 **B.     Motion for Summary Judgment Filed by Dora Schriro**
20 Schriro filed her motion for summary judgment on February 9, 2006. On February
21 13, 2006, the Court issued an Order stating that Plaintiff would have until March 17, 2006
22 to respond. The Court advised Plaintiff that if he failed to file a timely response, the Court
23 would have the discretion to dismiss the case. More than a week has passed since that date
24 and Plaintiff has not responded. Accordingly, the Court grants Schriro's motion for summary
25 judgment.

26 **C.     Motion for Summary Judgment Standard**
27 The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
28 Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no

- 4 -

1 genuine issues of material fact remain; and (2) after viewing the evidence most favorably to
2 the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.
3 Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986);
4 *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).

5       In considering a motion for summary judgment, the court must regard as true the non-
6 moving party's evidence, if it is supported by affidavits or other evidentiary material.
7 *Celotex,* 477 U.S. at 324, 106 S. Ct. at 2548; *Eisenberg,* 815 F.2d at 1289. However, the
8 non-moving party may not merely rest on its pleadings; it must produce some significant
9 probative evidence tending to contradict the moving party's allegations, thereby creating a
10 material question of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S. Ct.
11 2505, 2513-14 (1986) (holding that the plaintiff must present affirmative evidence in order
12 to defeat a properly supported motion for summary judgment); *First Nat'l Bank v. Cities*
13 *Serv. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968). When a case involves a *pro se*
14 litigant, the claims and motions filed by the *pro se* litigant must be liberally construed. *See*
15 *United States v. Seesing,* 234 F.3d 456, 462 (9th Cir. 2000); *Frost v. Symington*, 197 F.3d
16 348, 352 (9th Cir. 1999). However, *pro se* litigants are still bound by the rules of procedure.
17 *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). To defeat summary judgment, a *pro se*
18 plaintiff cannot rely only on his allegations but must support his complaint by presenting
19 significant and probative evidence. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.
20 1984).

21       To state a claim for relief under Section 1983,[3] a plaintiff must show that (1) he was
22 deprived of a right secured by the Constitution or laws of the United States and (2) that the

---

[3] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any right, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

1 alleged deprivation was committed under color of state law. *Am. Mfrs. Mutual Ins. Co.*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985 (1999).

### C. Motion for Summary Judgment Filed by Dumas

The Eighth Amendment's prohibition on cruel and unusual punishment obligates states to provide adequate medical care to incarcerated individuals. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976). States violate this obligation if they show deliberate indifference to a prisoner's serious medical needs. *Id.* at 104, 97 S. Ct. at 291; *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir. 1989) (citing *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290)). "A medical need is serious if the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Dickey v. Vargo,* 2004 WL 825624, at *2 (D. Or. Feb. 27, 2004) (citing *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997)). *See also Anthony v. Dowdle,* 853 F.2d 741, 742 (9th Cir. 1988) (citing *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291)). "State prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1986) (citations omitted).

The First Amended Complaint contains one allegation specific to Dumas. Construed liberally, it essentially alleges that Dumas knew that surgery was needed to repair the hernia, but refused to take the steps necessary to cause the surgery to be performed. (First Am. Compl. at 6.) The First Amended Complaint faults Dumas for failing to "press the issue" once he learned that ADOC had not approved the surgery. (First Am. Compl. at 6.) In Plaintiff's response to Dumas's motion for summary judgment, Plaintiff considerably expands his allegations against Dumas. Plaintiff seems to concede that the issue of whether he was entitled to surgery was out of Dumas's hands. Instead, Plaintiff argues that Dumas committed a violation of constitutional proportions by failing to properly treat the pain Plaintiff experienced leading up to the surgery.

First, the Court turns to the allegations in the First Amended Complaint. As Plaintiff essentially concedes, the analysis begins and ends with the fact that Dumas did not have the

- 6 -

1  authority to authorize the surgery once it had been denied by ADOC. Dumas is not a
2  surgeon, nor did he make "surgical decisions." (Dumas Aff. at 2.) Rather, his role was
3  limited to determining whether the hernia was reducible, and if so, treating it through non-
4  surgical means. Plaintiff cannot maintain an action against Dumas for failing to authorize
5  surgical repair of the hernia when Dumas, even if he had believed that surgery was a medical
6  necessity, did not have the power to authorize it. In essence, Plaintiff's claim amounts to a
7  disagreement with what he asserts is an ADOC policy of not authorizing the surgical repair
8  of hernias until they become strangulated or non-reducible. Even assuming that this is a
9  legitimate gripe, that claim is not properly leveled at Dumas.

10  Next, the Court reluctantly addresses the allegations which appear for the first time
11  in Plaintiff's response to Dumas's motion for summary judgment: that Dumas provided
12  Plaintiff with "inadequate" medical care leading up to the surgery.

13  The record is clear that Dumas's conduct in treating Plaintiff's hernia was far from
14  indifferent; to the contrary, Dumas was diligent and attentive. Dumas met with Plaintiff
15  approximately fifteen times in less than two years. Each of those meetings came at Plaintiff's
16  request, and there is no evidence that Dumas ever refused to treat Plaintiff when asked to do
17  so. At each of those meetings, Dumas examined Plaintiff's hernia and determined whether
18  it had become strangulated or non-reducible. As soon as the hernia expanded in size, Dumas
19  promptly re-submitted Plaintiff's surgery request and surgery was successfully performed.
20  Until that point, Dumas prescribed a detailed course of treatment, not all of which Plaintiff
21  chose to follow. Dumas began by prescribing over-the-counter painkillers, then, when
22  Plaintiff continued to complain of pain, Dumas prescribed Tylenol with Codeine. Dumas
23  also ordered Plaintiff to wear a hernia belt, and on the occasions Plaintiff wore it, Dumas
24  noted that the hernia did not increase in size. However, Dumas notes, and Plaintiff does not
25  dispute, that at several of their meetings, Plaintiff was not wearing his hernia belt. Dumas
26  also ordered that Plaintiff cease the performance of manual labor, and had Plaintiff relocated
27  to a lower bunk to minimize his movements. As a matter of law, this conduct does not rise
28  to the level of a constitutional violation. *See Iniguez v. Chief Med. Officer, San Quentin State*

*Prison,* 2002 WL 31750217, at *2-*3 (N.D. Cal. Dec. 3, 1999) (dismissing prisoner's deliberate indifference claim stemming from alleged failure to properly treat inguinal hernia where prisoner was seen on multiple occasions by doctors, prescribed a hernia belt, ordered to refrain from physical activity, and while "plaintiff may have preferred to have the surgery, there is no showing that surgery was medically required or that the treatment plaintiff did receive was medically inadequate"); *Johnson v. Contra Costa County Health Servs.,* 1999 WL 760628, at *4 (N.D. Cal. Sept. 17, 1999) (dismissing prisoner's deliberate indifference claim stemming from alleged failure to properly treat a reducible hernia where "medical staff responded promptly responded to [the prisoner's] complaints of pain and injury; exercised care and caution in determining the extent of his injury; provided him with instructions for limiting the pain and with pain medication; and ordered that he be accommodated to the extent possible").

   The fact that Plaintiff disagrees with Dumas's treatment and, in particular, his choice of painkilling medication, is of little consequence, as "[a] difference of opinion between a patient and a physician regarding appropriate medical treatment, without more, is insufficient to state a claim under section 1983." *Franklin v. State of Or., State Welfare Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981). *See Jernigan v. Steinhauser,* 2005 WL 2465895, at *1-*2 (D. Ariz. Oct. 6, 2005) (dismissing prisoner's deliberate indifference claim where prisoner and doctor disagreed as to whether surgery was "medically warranted"). Plaintiff presents no evidence that Dumas misdiagnosed the hernia as reducible, nor does Plaintiff present any evidence that the delay in surgery caused him any injury. *See Shapley v. Nev. Bd. of State Prison Com'rs,* 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference."). *See, e.g., Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir. 2004). Plaintiff also fails to marshal any evidence that the course of treatment provided by Dumas was "medically unacceptable." *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996) (where different courses of treatment are available, a prisoner must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances"). Because no reasonable jury could conclude that

1  Dumas's treatment of Plaintiff violates the Eighth Amendment, Dumas is entitled to summary
2  judgment on all claims against him.
3      **IT IS ORDERED** granting the Motion for Summary Judgment filed by Defendants
4  Thomas, CSC, Kendall and Mullen (Doc. 131).
5      **IT IS FURTHER ORDERED** granting the Motion for Summary Judgment filed by
6  Defendant Dumas (Doc. 122).
7      **IT IS FURTHER ORDERED** granting the Motion for Summary Judgment filed by
8  Defendant Schriro (Doc. 173).

    DATED this 24th day of March, 2006.

*Susan R. Bolton*
Susan R. Bolton
United States District Judge